RECEIVED

MAR 1 9 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT                c
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

DAVID FEZELL STUBBS                    CIVIL ACTION NO.: 1:12-3158

VERSUS

WARDEN LOUISIANA STATE              JUDGE DEE D. DRELL
    PENITENTIARY                    MAGISTRATE JUDGE JAMES D. KIRK

<u>REPORT AND RECOMMENDATION</u>

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. §2254 by pro se petitioner David Fezell Stubbs (Stubs)(Doc. 1). Stubbs contests his 2007 conviction on one count of second degree murder in violation of La. R.S. 14:30.1 and one count of possession of a firearm by a convicted felon in violation of La. R.S. 14:95 following a jury trial held before Judge Thomas Yeager in the Ninth Judicial District Court, Rapides Parish, State of Louisiana (9th JDC). Stubbs received a sentence of life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence on the murder charge and a fifteen year sentence at hard labor on the charge of possession of a firearm by a convicted felon. The sentences were ordered to run consecutively.

Following his conviction, Stubbs timely filed an appeal with the Louisiana Third Circuit Court of Appeal ("Third Circuit") and on February 11, 2009, the Third Circuit affirmed both the conviction and the sentence. Stubbs then filed a writ of certiorari with the Louisiana Supreme Court which it denied on

November 25, 2009.

On or about May 17, 2010, Stubbs timely filed an Application for Post-Conviction Relief in the 9th JDC which was denied. Stubbs then applied for supervisory and/or remedial writs with the Third Circuit which was denied on June 4, 2010. Thereafter, Stubbs sought relief from the Louisiana Supreme Court but it denied Stubbs' writ on October 26, 2012. Accordingly, Stubbs filed an application for a writ of habeas corpus with this court on December 27, 2012.

In the application, Stubbs raises six grounds for habeas relief: (1) denial of due process in that he was denied a competency hearing, (2) ineffective assistance of counsel due to failure to investigate and pursue an insanity/incompetency defense, (3) ineffective assistance of counsel for failure to cross examine witnesses, (4) ineffective assistance of counsel due to trial counsel's limited designation of the record thereby adversely affecting the outcome of his appeal, (5) being forced to disclose privileged attorney/client communications before the District Attorney during a pretrial hearing, (6) insufficient evidence.

<u>RULE 8 RESOLUTION</u>

This court is able to resolve the merits of this *habeas corpus* petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims and the State court records provide the

required and adequate factual basis necessary for the resolution of
the habeas corpus petition.  Moya v. Estelle, 696 F.2d 329, 332-33
(5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir.
1980); Habeas Corpus Rule 8(a).

### STANDARD OF REVIEW

An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall
be considered only on the ground that he is in custody in violation
of the Constitution or laws or treaties of the United States.  28
U.S.C. §2254(a).

Under 28 U.S.C. §2254 and AEDPA, which is applicable to habeas
petitions filed after its effective date on April 24, 1996, habeas
relief is not available to a state prisoner with respect to a claim
that was adjudicated on the merits in the State court proceeding
unless the adjudication of the claim (1) resulted in a decision
that was contrary to, or involved an unreasonable application of
clearly established Federal law as determined by the Supreme Court
of the United States or (2) resulted in a decision that was based
on an unreasonable determination of the facts in light of the
evidence presented in the State Court proceeding.  Therefore, pure
questions of law and mixed questions of law and fact are reviewed
under Section 2254(d)(1) and question of fact are reviewed under
Section 2254(d)(2).  Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir.
2001), cert. den. 534 U.S. 885 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts.  Martin, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable.  A federal court cannot grant habeas relief simply by concluding the state court decision applied clearly established federal law erroneously. The court must conclude that such application was also unreasonable.  Id.

When a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under Section 2254 unless the harmless determination itself was unreasonable.  Mitchell v. Esparanza, 540 U.S. 12 (2003). Moreover, in Section 2254 proceedings, a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (2007).

The Court should treat the error as if it affected the verdict and the State bears the burden of persuasion as to the harmlessness of the error.  Fry, 2007 WL 1661463 at *6.

FACTS

The facts of the case, as set forth by the Third Circuit, are as follows:

On October 9, 2006, Defendant flagged down an officer patrolling in his neighborhood and told the officer that he saw a body lying in the grass by a levee.  The officer approached the body and discovered that the victim was still alive.  After emergency transport to the hospital, the body was identified as David Ivy.  Mr. Ivy died shortly after his arrival at the hospital from a gunshot in the face located between the eye and ear.

At the time of the murder, Defendant worked as a "handyman" for Richard Jones, the owner of a nightclub located near Defendant's home.  Jones testified about two weeks before the murder, he loaned the Defendant a single-shot .22 rifle for the purpose of squirrel hunting.  Once the murder investigation began, Defendant was taken into custody where he gave a tape-recorded statement.  In this statement, Defendant admitted to shooting Mr. Ivy and told the officers where the murder weapon was located.  It was later determined that the bullet retrieved from the victim's head was fired from the same gun Jones loaned to Defendant.

While incarcerated at the parish jail, Defendant had a phone conversation with Jones and again admitted to shooting Mr. Ivy.  This conversation was also recorded and was introduced into evidence at trial.  Additionally, Jones was called as a State's witness to testify about this conversation and about certain events that transpired on the morning of the murder.

Jones testified that on the morning of the incident, Defendant called him about 5:00 a.m. and told him that prowlers were trying to break into his club.  When Jones met Defendant at his club, he saw evidence of an attempted break-in and called the police.  Jones testified before the police arrived, Defendant told him

he saw two men trying to break into the club and he and another unidentified individual chased the two men. According to Jones, Defendant stated one of the burglars "gave up his wallet" and then Defendant gave the wallet to Jones.   When the police arrived, Jones handed the wallet to Officer Powell, the investigating officer.   The wallet belonged to David Ivy.   According to Officer Powell's report, Jones stated that he saw two white males at the club and he found the wallet on the ground outside of the club.   The discrepancy between Jones's testimony at trial and his statement to Officer Powell is at the center of Defendant's appeal.

(Doc. 22-2).

## LAW AND ANALYSIS

### DUE PROCESS VIOLATIONS

It is well settled that it is a violation of due process to convict a legally incompetent defendant.  Pate v. Robinson, 383 U.S. 375, 378 (1966).  Stubbs contends that his due process rights were violated because, he was denied an opportunity to prove he was legally incompetent the same at a competency hearing and he was tried and convicted of the aforementioned charges despite being legally incompetent.

The court's inquiry into whether due process rights have been violated depends upon whether the violation is substantive or procedural.  Holmes v. King, 709 F.2d 965, 967 (5th Cir. 1983). Substantive due process requires that a defendant be tried and convicted only if he possesses both "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." Drope v. Missouri, 420 U.S. 162, 172

(1975)(quoting Dusky v. United States, 362 U.S. 402 (1960)). Whereas, procedural due process requires states to "afford procedures adequate to guard an accused's right not to stand trial or suffer conviction while incompetent." Holmes v. King, 709 F.2d 815, 967 (5th Cir. 1966), citing Drope, 420 U.S. at 172 and Pate, 383 U.S. at 385.  Stubbs contends both his procedural and substantive due process rights were violated.

Procedural Due Process

"To show a procedural violation, the accused must point to evidence before the trial court that raised a bona fide doubt about competency.  Once such a doubt is known to the trial court, it must conduct an adequate hearing. Holmes, 709 at 967, citing Pate, 383 U.S. at 385.  "The burden imposed upon a habeas petitioner to demonstrate incompetency in fact at the time of trial is extremely heavy." Thompson v. Blackburn, 776 F.2d 118, 124 (5th Cir. 1985), citing Johnson v. Estelle, 704 F.2d 232, 238 (5th Cir. 1983), cert. denied 465 U.S. 1009 (1984).  A court looking at the issue on collateral review must look at "whether, in light of what was then known [by the state trial court], the failure to make further inquiry into [the defendant's] competence to stand trial, denied him a fair trial." Drope v. Missouri, 420 U.S. 162, 174-75 (1975).

Louisiana Code of Criminal Procedure article 641 sets forth the definition for mental incapacity to proceed:

> Mental incapacity to proceed exists when, as a result of
> mental disease or defect, a defendant presently lacks the

7

capacity to understand the proceedings against him or to assist in his defense.

Once the issue of mental capacity is raised, be it by the defense, prosecution or court, all proceedings must cease until the defendant is determined to have the mental capacity to proceed. La.C.C.Cr.P. art. 642. An order for mental examination be issued will only when the court has "reasonable ground to doubt the defendant's mental capacity to proceed" La.C.C.Cr.P. art. 643. The procedures set forth in the Louisiana Code of Criminal Procedure provide the same due process rights that are set forth under federal law. See Pate, supra. Thus, to the extent Stubbs contends state procedures were inadequate, his claim fails.

Stubbs claims his procedural due process rights were violated because "criminal proceedings were not held in abeyance for [his] competency to proceed to be both medically and judicially determined." (Doc. 1-3, p.11). Because the defense failed to raise the issue, Stubbs relies on the fact a court may raise the issue of competency sua sponte.

Stubbs contends evidence sufficient to raise a bona fide issue of mental disease and defect was presented to the court on several occasions. Specifically, he points to his application for court appointed attorney in which he indicated he received SSI/Disability benefits; his motion to suppress in which a history of mental illness was noted; testimony from the hearing on the motion to suppress during which he advised he was diagnosed with schizophrenia

8

"ever since [he] was a baby" and he contends Judge Yeager acknowledged he suffered from mental illness and was not taking his medication at the time of the police interview; and his own trial testimony that he could neither read nor write.[1]   A thorough review of the record shows that this so called evidence consists of nothing more than unsupported and/or misconstrued statements.   Neither witnesses, sworn affidavits, Social Security Administration records, school records, nor medical records were ever (nor have ever been) produced.   Additionally, claims that Judge Yeager acknowledged Stubbs' history of mental illness and not being medicated at the time of his police interview is inaccurate.   Judge Yeager was simply reciting facts Stubbs set forth in his motion to suppress.

The mere presence of a mental defect does not demonstrate mental incompetence.  Bruce v. Estelle, 536 F.2d 1051, 1059 (5th Cir. 1976); Curry v. Estelle, 531 F.2d 766, 768 (5th Cir. 1976)("Due process...does not mandate a full-blown hearing every time there is the slimmest evidence of incompetency."); Bouchillon v. Collins, 907 F.2d 589, 593 (5th Cir. 1990).  See also, Clark v. Arizona, 548 U.S. 735, 775 (2006).  These bald allegations with out substantiating evidence do not present bona fide issues of incompetence. Accordingly, Judge Yeager had no reason to raise the issue *sua sponte*.   Accordingly, Stubbs has not carried his burden of proving

_____

[1]  Testimony of the detective who interviewed Stubbs as a possible suspect testified "[Stubbs] informed me he could read very well." (Doc. 21-1, p. 40).

9

a violation of his procedural due process rights.

Substantive Due Process

In order to prove substantive due process rights were violated, the "accused must prove an inability to either comprehend or participate in the criminal proceedings.  To obtain a habeas corpus hearing on a substantive claim, the accused must offer clear and convincing evidence to raise a threshold doubt about competency." Id., citing Lokos v. Capps, 625 F.2d 1258, 1261 (5th Cir. 1980).

As discussed above, Stubbs failed (and continues to fail) to provide any evidence of his inability to comprehend or participate in the criminal proceedings against him.  The record reflects that Stubbs did in fact comprehend and participate in the proceedings against him.  Stubbs, on his own, requested a new attorney on two occasions.  Additionally, minutes from the 9th JDC hearing on March 9, 2007, shows Stubbs was writing letters to the District Attorney's Office.  The fact Stubbs undertook these actions on his own evidences he had an understanding of and participated in the proceedings.  Further, he has not provided any evidence which raised a legitimate question regarding his ability to either understand or participate in the proceedings.  As such, his claim lacks merit.

INEFFECTIVE ASSISTANCE OF COUNSEL

Stubbs contends both his trial and appellate counsel were ineffective and his Sixth and Fourteenth Amendment Rights were violated as a result thereof.  To establish that his legal

representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  He must show that his counsel's performance was both deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e., that errors by counsel "actually had an adverse effect on the defense").

The former component of the test requires the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  The latter component mandates the petitioner demonstrate a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  <u>Anderson v. Collins</u>, 18 F.3d 1208, 1215 (5th Cir.1194) and cases cited therein.  Also, <u>U.S. v. Segler</u>, 37 F.3d 1131, 1136 (5th Cir. 1994).   It is not enough for the defendant to simply show that the errors had some conceivable effect on the outcome of the proceedings.  <u>Id.</u>

The court does not assess any alleged error in isolation.  In an examination of state proceedings under 28 U.S.C. § 2254 the court will not reject an adjudication on the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established federal law, or the state court's determination of the facts is manifestly unreasonable in

light of the evidence.  Jones v. Cain, 2000 WL 1262609, 227 F.3d 228

(5th Cir. Oct. 2000), and cases cited therein.

In Dowthitt v. Johnson, 230 F.3d 733 (5th Cir. 2000), the Fifth

Circuit stated:

> As the Supreme Court has counseled, a "fair assessment of
> attorney performance requires that every effort be made
> to eliminate the distorting effects of hindsight ... and
> to evaluate the conduct from counsel's perspective at the
> time." Strickland, 466 U.S. at 689.  Thus, our scrutiny
> of counsel's performance is highly deferential.  See id.
> We must be particularly wary of 'argument[s] [that]
> essentially come[] down to a matter of degrees.  Did
> counsel investigate enough? Did counsel present enough
> mitigating evidence?  Those questions are even less
> susceptible to judicial second-guessing."  Kitchens v.
> Johnson, 190 F.3d 698, 703 (5th Cir. 1999).

Dowthitt, 230 F.3d at 743.

Failure to Investigate and Rely Upon Incompetency

Stubbs contends his trial counsel failed to enter a plea of

not guilty and not guilty by reason of insanity; failed to

investigate, prepare and present evidence of his legal incompetence;

and, failed to request a competency hearing.

Counsel has a duty to make reasonable investigations or to make

a reasonable decision that makes particular investigations

unnecessary.  Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir.1993),

citing Strickland v. Washington, 466 U.S. 668, 691 (1984). A

defendant or petitioner who alleges a failure to investigate on the

part of his counsel must allege with specificity what the

investigation would have revealed and how it would have altered the

outcome of the trial.  <u>Nelson</u>, 989 F.2d at 850, citing <u>United States v. Green</u>, 882 F.2d 999, 1003 (5th Cir.1989).

The only allegation Stubbs adds to those already made in support of his argument of incompetency is that his trial attorney argued in a motion for a continuance "[t]hrough the efforts of his investigator and his own investigation, counsel has gathered information which indicates that Mover may suffer from a mental illness that may further call into question the validity of the confession Mover gave."  This statement undermines Stubbs own argument that counsel failed to investigate.

By his own admission, counsel and counsel's investigator discovered information regarding a mental illness.  Simply because an investigation was undertaken does not imply the information discovered was favorable.  In fact, the lack of evidence in this record and the fact Stubbs has not specified a diagnosis, any treatment received or medications administered, leads one to conclude that any mental illness that was discovered had no bearing on competency or the validity of the confession.  Without evidence of incompetence, counsel had no duty to move for a competency hearing, seek to amend the plea or present any such defense.  Even if counsel failed to investigate Stubbs' alleged incompetency, the burden is on Stubbs to demonstrate he was prejudiced by that failure.  See <u>Lockhart v. McCotter</u>, 782 F.2d 1275, 1282 (5th Cir.1986), cert. den., 479 U.S. 1030, 107 S.Ct. 873 (1987).

To show prejudice, Stubbs must prove that an alleged breach of his attorney's duty to investigate resulted in an actual and substantial disadvantage to the course of his defense. Baldwin, 704 F.2d at 1333. Stubbs has not and cannot carry this burden of proof. As stated repeatedly herein, the so called evidence is nothing more than bald assertions of incompetence. There is no evidence which truly calls competency into question and triggers the need for a hearing. Thus, there was no basis to enter a plea of not guilty by reason of insanity and no basis upon which such a finding could be made.

Finally, Stubbs arguments that appellate counsel was ineffective for failing to raise these issues on appeal is without merit as he has not and cannot demonstrate prejudice. His claims of ineffective assistance of counsel are currently before the court; therefore, he has not suffered any prejudice.

Failure to Cross Examine

Stubbs further contends trial counsel was ineffective because he did not take the opportunity to cross-examine Jones. Stubbs contends counsel should have used the transcript of the telephone call between Jones and he to show Jones shot Ivy and pressured Stubbs into admitting to the murder charge.

First, Stubbs fails to suggest or show what cross-examination of Jones would have gained. Presentation of testimonial evidence is a matter of trial strategy and allegations of how a witness would

have testified are speculative.  Graves v. Cockrell, 351 F.3d 143, 155 (5th Cir. 2003), amended in other part, 351 F.3d 156 (5th Cir. 2003), cert. denied, 124 S.Ct. 2160 (2004).  Also, Boyd v. Estelle, 662 F.2d 388, 390 (5th Cir. 1981).  Stubbs baldly asserts cross-examination would have resulted in Jones admitting his role in the murder of Ivy but it is equally as plausible to conclude Jones would have continued to testify he had nothing to do with the murder.

Second, though counsel did not cross-examine Jones, he did call him as a defense witness.  By doing so, counsel could wait for the prosecution to conclude its presentation, gather additional information and then question Jones.  Not only would counsel not be confined to the questions asked by the prosecution but he would also be able to use the information gathered from other witnesses to formulate questions which should be asked.  This was sound trial strategy and even if it wasn't, Stubbs fails to show he was prejudiced by counsel's failure to cross-examine Jones.

Despite Stubbs' contention, cross-examination of Jones was not the only means by which counsel could "bolster" the defense that Jones orchestrated the murder of David Ivy.  At various points throughout trial, counsel called Jones' role in the murder into question and suggested that Stubbs was Jones' pawn.  The jury simply did not believe this version of events.

Incomplete Record

Stubbs complains that trial counsel failed to designate the

entire record for transcription because he wanted to hide his deficient performance.  Stubbs further complains that the failure to designate the entire record resulted in appellate counsel's inability to file a complete brief.

Trial counsel designated "all testimony taken at the trial, excluding voir dire, the sentencing hearing and the hearing on the Motion to Reconsider Sentence, if actually held" as the appellate record.  Stubbs contends this was intentional because the transcript would reveal counsel was ill prepared for trial[2] and was biased against Stubbs because he represented David Ivy's sister in an unrelated criminal prosecution.  These allegations are without merit.

Stubbs allegations of intentional partial designation of the record, failure to prepare for trial and bias against his client are again baseless allegations lacking support.  It is general practice for trial counsel to designate the trial portion of the case for transcription and Stubbs fails to provide any evidence to the contrary.  The reading of the trial transcript, particularly in light of the record as a whole, shows counsel put forth the best defense he could in light of the facts before him.  Counsel had to deal with Stubbs' numerous confessions and attempted to do so by seeking their suppression prior to trial and explaining them away

_____

[2]  During the motion for continuance, counsel advised that in August 2007, he was involved in preparing for a capital murder case and a week before trial, his wife was critically ill.

at trial by explaining Stubbs was nothing more than Jones' pawn.
Finally, Stubbs claims of bias are equally unsupported.  Though he
points to portions of the record as evidence supporting counsel
represented David Ivy's sister (Doc. 1-3, p.29), there is nothing
therein which shows representation of Melissa Ivy Carr much less a
conflict or bias arising therefrom.

Again, Stubbs fails to show how counsel was inadequate in any
of these respects or that he was prejudiced by the alleged
ineffective assistance.  Accordingly, this claim should be denied.

ATTORNEY/CLIENT COMMUNICATIONS

Stubbs contends the trial judge did not properly conduct
pretrial hearings regarding his request for new counsel because he
was not allowed to participate in the first hearing and the district
attorney was allowed to participate and overhear confidential
attorney/client communications during the second hearing.

The first hearing was held at the early stages of the criminal
proceedings.  Stubbs complained he had not met with counsel and did
not know where proceedings stood.  The record reveals that Stubbs
was present for the hearing and that Judge Yeager spoke to him about
his two concerns.  The hearing concluded with the judge finding
Stubbs was now aware of both who his counsel was and what steps had
been taken to that date; accordingly, the motion for new counsel was
denied.

Stubbs was also present during the second hearing which took

17

place at the eve of trial.  Though the district attorney was present at the time, there was no indication that he should not be and there was nothing discussed which either called for the discussion of revealed the content of matters covered by the attorney-client privilege.  Stubbs has not specifically stated what communication was revealed nor pointed to any part of the transcript. Accordingly, he has not carried his burden of proof and the claim should be denied.

INSUFFICIENT EVIDENCE

A reviewing court confronted with a claim of insufficient evidence must, after viewing all the evidence in the light most favorable to the conviction (prosecution), determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Cupit v. Whitley, 28 F.2d 532, 542 (5th Cir. 1994), cert. den., 513 U.S. 1163, 115 S.Ct. 1128, 130 L.Ed.2d 1091 (1995), citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  A jury's determination of witness credibility, the inferences made on evidence, and the jury's reasonable construction of the evidence are entitled to a great deal of deference by the reviewing court.  Marshall v. Lonberger, 459 U.S. 422, 433-35 (1983).  In addition, where there has been thoughtful review of the sufficiency of the evidence by a state appellate court, that court's findings are entitled to great weight. Jackson, 443 U.S. at 322 n.15.  In this case, Stubbs was tried and

convicted by a jury and the Louisiana Third Circuit Court fo Appeal considered and rejected his claim of insufficient evidence.

"Habeas relief under section 2254 on a claim of insufficient evidence is appropriate only 'if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" West v. Johnson, 92 F.3d 1385, 1393 (5th Cir. 1996), quoting Jackson v. Virginia, 443 U.S. 307, 322-26 (1979). See also, Dupuy v. Cain, 201 F.3d 582, 589 (5th Cir. 2000); Cupit v. Whitley, 28 F.2d 532, 542 (5th Cir. 1994), cert. denied 513 U.S. 1242 (1997).

To apply this standard, the court looks to the elements of the offense as defined by state substantive law. Donahue v. Cain, 321 F.3d 1000, 1004 (5th Cir. 2000). All credibility choices and conflicting inferences are to be resolved in favor of the verdict. A determination of a factual issue made by a State court shall be presumed correct, and the petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. Ramirez v. Dretke, 398 F.2d 691, 693 (5th Cir. 2005).

Stubbs was convicted on one count of second degree murder which is defined in Louisiana Revised Statute 14:30.1 as the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm. As the trier of fact, the jury was tasked with determining whether Stubbs engaged in conduct that fit the elements of this crime.

Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant.  Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act.  La.R.S. 14:10(1).

Stubbs contends that though he admitted to shooting David Ivy more than once, there are "internal contradictions" and "irreconcilable conflicts" in the evidence which prevent the finding of guilt.  Specifically, no one saw him with David Ivy; no one saw him shoot David Ivy; no one heard gunshots; Jones' statements regarding how he obtained Ivy's wallet and what happened the morning of the murder contradict each other; and, Katrisa Williams (aka Katrisa Williams Watson) recanted her story that Stubbs admitted to shooting Ivy.

Among the witnesses connecting Stubbs to David Ivy are a young neighbor (Doc. 20, p.60-64), his former employer, Jones, (Doc. 20, p. 85-92), the officer who interviewed him once he became a suspect, Ronnie Howard (Doc. 21-1, p. 22-23) and an officer with whom he was acquainted, Lenn Hall (Doc. 21, p. 63-66).  All of these witnesses testified Stubbs harmed David Ivy in some way.  The young neighbor testified Stubbs told her sister and her that he had "knocked out" a man behind the levy while Jones, Len Hall and Ronnie Howard all testified Stubbs admitted to shooting Ivy.  In addition to this

testimony regarding the killing of David Ivy, was the testimony of Len Hall who stated that Stubbs confirmed he thought about shooting Ivy before he actually did so.

After viewing the evidence from both the prosecution and the defense, one must conclude it is sufficient for a rational trier of fact to find Stubbs possessed the specific intent to and, did in fact, kill David Ivy.  Accordingly, this claim should be denied.

CONCLUSION

IT IS HEREBY RECOMMENDED that Stubbs petition for habeas corpus relief (Doc. 1) be DENIED.

Under the provisions of 28 U.S.C. Section 636(b)(1)© and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the  proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass**

v. United Services Automobile Association, **79 F.3d 1415** (5th Cir. 1996).

      **THUS DONE AND SIGNED** in chambers at Alexandria, Louisiana this 18th day of March, 2014

                                          JAMES D. KIRK
                          UNITED STATES MAGISTRATE JUDGE